Parker, C. J.
A new trial is petitioned for in this case, because, in consequence of an omission of a necessary formality in bringing the action before this Court by writ of error, the petitioners have been deprived, without their fault, of an opportunity of having an ultimate legal decision of the question of their liability to support the paupers, the expense of maintaining whom by the inhabitants of the town of Dana has been recovered against them in the suit which they pray to review.
There is no doubt that such review may be granted in this case, within the general discretion given to this Court by the statute providing for reviews upon petition, if, upon examination, we are satisfied that the petitioners have been illegally charged by the verdict of which they complain.
The paupers are the widow and four children of Aaron Haven ; who, not having acquired any settlement in their [*431] * own right, are considered to have the settlement of their husband and father. The question, therefore, is, Was the *377 said Aaron settled in Petersham 9 If he was not, Petersham was not chargeable, and the verdict against that town was wrong.
It is agreed, that the said Aaron acquired no settlement in Peters-ham by any act of his own. His settlement must, therefore, be derivative, he having been born a bastard. And as his mother, at the time of his birth, had a lawful settlement in Framingham, so, by the express words of the statute of 1789, c. 14,(1) had he. Did he, then, afterwards acquire derivatively another settlement in Petersham 9 If he did, that before gained in Framingham was lost; for no person can, at the same time, be lawfully settled in two different towns within this Commonwealth.
It is further agreed, that, in 1792, his mother gained a settlement, oy marriage, in Petersham. She, of course, lost her settlement in Framingham at the same time. Did the settlement of Aaron, her illegitimate son, pass with her to Petersham 9 or did it remain m Framingham, in consequence of his birth there of a mother who then had her legal settlement in that town ? This is the question, which must be settled by a reasonable construction of the statute of 1789, which was in force when she married in Petersham ; and which must continue to operate as to settlements actually acquired under it.
The words of that statute, applicable to this question, are : “ And children born in wedlock, at the time of their birth, and afterwards, shall be deemed and taken as inhabitants of the same town or district with their parents ; and children, otherwise born, shall be deemed and taken to be inhabitants with their mother, until they shall have gained a legal settlement in some other town or district.” The most natural and obvious construction of this clause is, that the bastard is to depend upon his mother for his settlement, having no independent one in consequence of his birth ; but liable to have his settlement, thus gained, changed by a * removal of the mother, [ *432] under such circumstances as to give her a new settlement. He is to be deemed and taken as an inhabitant with his mother ; that is, in consequence of his mother’s settlement, he shall have one in the same place, not acquired by his birth, but derived from his mother. Now, if the mother gains a new settlement, and her illegitimate son retains the old one, while under age and incapable of gaining one himself, the words of the statute, that he shall be deemed and taken an inhabitant with his mother, will by no means be fulfilled. For, in such a case, he would be an inhabitant without his mother, and totally independent of her.
But it has been ingeniously argued, that the closing words of the section, namely, “ Until they shall have obtained a legal settlement in *378 some other town or district,” show the intention of the legislature to have been, that illegitimate children have their settlement permanently fixed by their mothers at the time of their birth, from thence to continue until they acquired a settlement for themselves.
There would be great force in this argument, if the words rel-ed upon were applicable only to the last member of the sentence, namely, the provision for illegitimate children. But they are equally applicable to the provision for children born in wedlock, being unnecessary in either view ; because a settlement gained by legitimate or illegitimate children, after they come of age, would of course destroy any derivative settlement they might previously have had. The words, likewise, in the former part of the section, “At the time of their birth and afterwards,” are applicable to illegitimate as well as legitimate children ; it being evidently the intention of the legislature to give to an illegitimate child the settlement of his mother, in the same manner as they gave to a legitimate child the settlement of his parents. And this application of the words is expressly made to legitimate children in the statute of 1793, c. 34.
It is true, by the common law, birth (unless fraud or lawful restraint should interpose) fixes the settlement of a bastard.† But the •ule of the common law has been long since done away in this Commonwealth.
| *433] * As the legislature have undertaken to establish the principles upon which habitancy shall be gained, we are limited in our inquiries to the sense of the legislature, as expressed in their several statutes. Some of the provisions may seem to have been arbitrarily settled, without reference to any superior advantage or reasonableness, beyond others which might be suggested. But the principal object was, to settle rules upon a subject affecting, at one time or another, every town in the Commonwealth ; and these rules, once understood and inflexibly adhered to, will, in a series of years, probably have an equal and just operation throughout the several parts of the State.
As is has been decided,(2) that the mother of a bastard child has the rightful custody of his person, and that she is bound to support and maintain him, he is of course a part of her family, wherever she may go. A provision of the legislature, therefore, that his settlement shall be the same as hers, until he makes one for himself, is in no degree inconsistent with the relation, by our law, subsisting between a mother and her illegitimate child.
But it is said, that the statute of 1793, having established a different rule, namely, that the settlement of the mother, at the time of the birth of her bastard child, shall be his settlement, until he gains a new *379 one himself, we ought to consider this as a legislative exposition and interpretation of the statute of 1789.
As, however, a new system was established by the statute of 1793, in many important points differing from that which was established by the statutes until then in force, it is impossible for us to infer that what was enacted in the last statute was, in fact, what was before intended to be enacted ; especially, when the interpretation is in violation of the natural and obvious meaning of the words.
We are of opinion that the jtidgment of the Court of Common Pleas was right, and, therefore, that the petitioners can take nothing by their petition.†

 Repealed by Stat. 1793, c. 34.

 Bott., by Cont. & Pratt, Vol. 2, ch. 1.

 Wright vs. Wright, 2 Mass. Rep. 110.

 Vide Somerset vs. Dighton, ante, 383, and note.